**Robert Earl JACKSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–85–00443–CR.**

Court of Appeals of Texas, Dallas.

Jan. 6, 1986.

Rehearing Denied Feb. 19, 1986.

David W. Coody, S. Michael McColloch, Bruner, McColl, McColloch & McCurley, Dallas, for appellant.

Mary Jo Kain, Asst. Dist. Atty., Dallas County, Dallas, for appellee.

Before AKIN, VANCE and ZIMMERMANN, JJ.

AKIN, Justice.

Robert Earl Jackson appeals his conviction by a jury for burglary of a habitation. The jury found both enhancement paragraphs in the indictment true and sentenced appellant to confinement for life in the Texas Department of Corrections. Appellant raises three grounds of error in his appeal: (1) that the evidence is insufficient to support his conviction; (2) that the trial court erred in admitting into evidence an involuntary statement given by appellant to police because of coercion; and (3) that the trial court erred in admitting reputation testimony of an unqualified witness. We agree with appellant's contention that the state has failed to rebut his testimony that his confession was involuntary because it was coerced. Consequently, we reverse the judgment of the trial court and remand for a new trial.

Initially, however, we must address appellant's contention that the evidence is insufficient, as a matter of law, to support his conviction. *Selman v. State*, 663 S.W.2d 838, 840 (Tex.Crim.App.1984). For purposes of this analysis, we consider all evidence before the jury, including the invalid confession. *See Gardner v. State*, 699 S.W.2d 831 (Tex.Crim.App.1985) (not yet reported) (inadmissible evidence is reviewed in determining sufficiency of the evidence). This analysis is necessary because if the evidence as presented is insufficient, we must reverse the judgment of the trial court and render a judgment of acquittal. *Burks v. U.S.* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). On the other hand, if we exclude the confession as improperly admitted, we do not review the evidence except to determine whether the error was harmless. *See Payne v. State of Arkansas*, 356 U.S. 560, 567–568, 78 S.Ct.

844, 849–850, 2 L.Ed.2d 975 (1958); *Jackson v. Denno*, 378 U.S. 368, 394, 84 S.Ct. 1774, 1790, 12 L.Ed.2d 908 (1964). If the error was not harmless, we must remand the cause for a new trial. Because appellant will be acquitted if we agree with his first point of error, but only granted a new trial under his second, we must review his sufficiency point first.

In determining the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution, and determine whether any trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt. *Girard v. State*, 631 S.W.2d 162 (Tex.Crim.App. 1982). The indictment charges, in pertinent part:

> that ... [the appellant] ... did then and there unlawfully knowingly and intentionally enter a habitation without the effective consent of [complainant], the owner thereof ... with the intent to commit THEFT....

In the court's charge to the jury at the guilt/innocence phase of the trial, the court did not apply the rule of parties to the facts in the case. The application portion of the charge reads, in pertinent part:

> "Now if you find from the evidence beyond a reasonable doubt that on or about the 27th day of November, 1984, in Dallas County, Texas, the defendant ... did knowingly or intentionally enter a habitation without the effective consent of [complainant], the owner thereof, who had a greater right to possession of the habitation than the defendant, with the intent to commit theft ... then you will find the defendant guilty as charged.

Thus the portion of the charge which applies the law to the facts in this case fails to even mention the theory of criminal responsibility as a party. However, later in the charge the jury is instructed on the abstract law of parties, as follows:

> All persons are parties to an offense who are guilty of acting together in the commission of the offense. A person is crim-

inally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or both.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

These instructions track the statutory provisions regarding conviction as a party to an offense. TEX.PENAL CODE ANN. §§ 7.01(a) and 7.02(a)(2) (Vernon 1974).

■ Appellant asserts on appeal that, because the paragraph applying the law to the facts fails to apply the law of parties, his guilt, if any, must be based on his *personal* acts and intent. Appellant concedes that failure of the trial court to apply the law of parties to the facts in the charge may not be complained of on this appeal since it was not objected to at trial. This omission in the charge, though error, is not fundamental error. *Romo v. State,* 568 S.W.2d 298, 302 (Tex.Crim.App.1978, on motion for rehearing); *Fountain v. State,* 681 S.W.2d 858, 863 (Tex.App.—Houston [14th Dist.] 1984, pet. ref'd). Appellant does contend, however, that the evidence is insufficient to prove that he personally intended to commit theft, and that his conviction must therefore be overturned. He asserts that the State cannot rely on party liability because the charge does not sufficiently inform the jury on that theory, citing *Benson v. State,* 661 S.W.2d 708, 715 (Tex.Crim.App.1983) *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984). *Benson,* however, does not limit the court's consideration of the "charge" to only that portion applying the law to the facts, as appellant would have us do here. Rather, *Benson* states that "the statutory elements of an offense must be set out *either* in the application paragraph *or* in the definition portion of the charge." [Emphasis added.] *Id.* at p. 714.

Appellant also cites the *Garrett* line of cases as support for his contention that the sufficiency of the evidence must be viewed in light of the application portion of the jury charge. *Garrett v. State,* 642 S.W.2d 779, 781 (Tex.Crim.App.1982) (*Garrett* I); *Garrett v. State,* 656 S.W.2d 97, 100 (Tex. App.—San Antonio 1983, pet. granted) (*Garrett* II). We note that discretionary review in *Garrett* II, was granted by the Court of Criminal Appeals over two years ago, and no final decision has yet been handed down. In our view, *Garrett* II, is not persuasive.

In *Garrett* I the Court of Criminal Appeals held that, while it is error not to apply the law of transferred intent to the facts in a murder charge, such an error is not fundamental. In making this decision, the court relied on its earlier decision regarding the law of parties in *Romo.* The court then went on to say:

> With the provisions of [the transferred intent statute] omitted from the *charge,* the prosecution is presented with the greater burden of proving a "knowing" act in which the defendant was aware that her conduct was reasonably certain to cause the *actual* result rather than merely the desired result.... It would seem quite possible that a defendant might intentionally fail to object to a jury charge which omits a proper application of transferred intent in order to require the State to meet the greater burden. [Emphasis added to the word "charge".]

*Garrett,* 642 S.W.2d at 781. In *Garrett* II the San Antonio Court of Appeals interpreted this language to require it, in reviewing the sufficiency of the evidence, to look only to the application portion of the charge to determine what elements the State must have proved and whether the evidence was sufficient to do so. We do not agree with this interpretation of *Garrett* I.

■ As noted above, *Garrett* I relies on *Romo* for its holding. *Garrett* I also quotes extensively from *Romo,* including that part of *Romo* where the possible advantages to the defendant in the State's

failure to insist on application of the law of parties are discussed. The language in *Garrett* I may be linked to that in *Romo*, and it may be implied that while the burden of proving the more specific crime would be upon the State if *no instruction* at all on party criminal responsibility were given in the charge, the failure to apply it to the facts only aids the defendant in his jury argument. There, he may argue that the State has failed to carry the burden placed on it by the charge—referring specifically to the language in the application paragraph. But while the defendant may argue this before the jury, the sufficiency standard *for appellate review* will be to look at the entire charge given to determine whether the evidence supports a conviction thereunder.

Furthermore, in *Romo*, the court stated that the *only* theory under which the appellant could be guilty was as a party, but the charge had failed to apply that theory to the facts. Nevertheless, in reviewing the sufficiency of the evidence, the court looked to the theory of party liability and upheld the appellant's conviction as a party. *Romo* 568 S.W.2d at 303–304. Finally, the holding in *Romo* is based on the rationale that, in a case where defendant, if guilty at all, *must be* guilty as a party, it is error to fail to apply the law of parties to the facts. But this error is not fundamental error. *Id.* This holding makes no sense if we are then required to review the sufficiency of the evidence in light of the application paragraph as given in the charge. In such a case, the evidence *must* be insufficient, as a matter of law, to prove personal liability if the defendant could *only* be guilty as a party.

Thus, we review the evidence in light of the entire charge, including the definitional portion of the charge in this case, which correctly informed the jury of the law of parties. Consequently, we review the evidence to determine its adequacy either under the theory of parties or by personal responsibility of the appellant, as was done in *Romo*, 568 S.W.2d at 304. *See also Fountain*, 681 S.W.2d at 863; *Hall v.*

*State*, 662 S.W.2d 37 (Tex.App.—Houston [1st Dist] 1983, pet. ref'd).

■ A brief summary of the evidence demonstrates its sufficiency to support appellant's conviction as a party to the offense of burglary of a habitation with intent to commit theft. Appellant's confession alone would be sufficient on this point. It states, in pertinent part:

Me and Gail W_____ went to the address on Belfort.... [S]he noticed a T.V. set in the house through a window. She said she was going in the house so I held the screen while she went in the house. Gail come back to the window ... and said the T.V. was in one of the rooms.

This, plus the evidence of appellant's fingerprints on the inside of the window screen, sufficiently supports his conviction as a party to the burglary charged here.

■ In addition, even if it were necessary to review the evidence for sufficiency to prove appellant's personal guilt, rather than his guilt under the law of parties, we would find the evidence here sufficient. The complainant testified that his lawnmower was inside the tool shed when he left home that morning. When he came home at noon, he saw appellant raking leaves in front of the house and spoke to appellant briefly. Complainant also observed a car matching the description of appellant's car parked on the street with the trunk open. Shortly thereafter, complainant observed that his property, previously in the tool shed, was stacked up in the back yard and that the lawnmower was missing. He returned to the front of his house to find appellant and the car gone. With respect to the lawnmower, appellant's confession states, "The lawnmower I put in my trunk when I first got there." The appellant's statement identifies the offense as that which occurred at 4573 Belfort on November 27, 1984. There can be no reasonable doubt that "the lawnmower" referred to was the one taken from 4573 Belfort—the address of the complainant's home. Furthermore, the fact that appellant took the lawnmower, which complainant testified had been inside the tool shed

before the offense, is sufficient to prove entry to a habitation. *See* TEX.PENAL CODE ANN. § 30.01 (Vernon 1974) (definition of a "habitation" includes structures appurtenant thereto); *Robinson v. State*, 658 S.W.2d 779, 781 (Tex.App.—Beaumont 1983, no pet.) (evidence of defendant's possession of stolen property, his movement of the property and presence near the scene of the burglary are sufficient to sustain his conviction for burglary). Consequently, we overrule appellant's contention that the evidence was insufficient to support his conviction.

We next turn to appellant's assertion that his confession was improperly admitted because the State failed to rebut his testimony that it was involuntarily given as the result of physical and mental coercion. At the pre-trial hearing to determine the admissibility of appellant's confession, only appellant and Police Officer James Oakerson testified. Appellant testified that Officer Oakerson and another officer, Officer Spillman, were "in and out" of the interrogation room. Officer Oakerson's testimony supported this particular assertion. Officer Spillman did not testify. Appellant then testified that Officer Spillman pushed him around and played Russian roulette by pointing a pistol at him and pulling the trigger. Officer Oakerson denied that he abused appellant or had any personal knowledge of such abuse by Officer Spillman. It is not clear from appellant's testimony whether Officer Oakerson was in the interrogation room during any of Officer Spillman's alleged coercive conduct, but the probable inference from all of his testimony is that Officer Spillman engaged in the conduct while Officer Oakerson was out of the room. In support of this inference, during cross-examination of appellant by the State's attorney, the following testimony was adduced:

Q. Okay. Now, what kind of—So, this Russian roulette doesn't have anything to do with Oakerson?

A. No, huh-uh.

Q. That was just Spillman?

A. Right.

Q. He's the bad guy?

A. Well, Oakerson knew—knew of it. He knew. They were working together.

Q. Okay. Was Oakerson there when that happened?

A. Oakerson didn't come at me with his deal until after Spillman had got his report.

Officer Oakerson's testimony was not competent to rebut the testimony of appellant that Officer Spillman physically and mentally abused him while Officer Oakerson was not present.

 We note that, at least once the issue of involuntariness of a confession because of coercion is raised, the State must not only introduce evidence that the confession was voluntary, but has the burden of persuasion on that issue. *United States v. Charles*, 738 F.2d 686, 696 n. 11 (5th Cir. 1984), *Farr v. State*, 519 S.W.2d 876, 880 (Tex.Crim.App.1975). The facts in this case are not similar to those discussed as a hypothetical in *Smith v. State*, 547 S.W.2d 6, 7, 8–9 n. 2 (Tex.Crim.App.1977). The court of criminal appeals there implied that a judge might be justified in disbelieving the appellant's testimony of coercion if the State explained the absence of a witness able to rebut those assertions. Here, the officer was available to testify. When the State offered to call Officer Spillman, the court refused permission. The State then failed to make a bill of exceptions to show what that officer's testimony would have been. In a case where the rebuttal witness is available, the State may not meet its burden of proving voluntariness of a confession by merely offering to call that witness. Because the burden is on the State, the complete lack of evidence, when such evidence is available, on some aspect of the voluntariness of a confession cannot create a presumption that the State's burden is met. The State, as any other party seeking to introduce evidence upon which its case relies, must make a bill of exceptions if its tender of evidence is refused. TEX.CODE CRIM.PROC.ANN. art. 40.09(6) (Vernon Supp.1986). Nevertheless, the State as-

serts that Officer Oakerson's testimony is "fundamentally inconsistent" with appellant's version of the facts and is therefore sufficient to rebut appellant's allegations of coercion. We disagree.

■ The State, in support of its argument, cites *Green v. State*, 682 S.W.2d 271, 293 (Tex.Crim.App.1984), *cert. denied*, —— U.S. ——, 105 S.Ct. 1407, 84 L.Ed.2d 794 (1985); and *Alonzo v. State*, 591 S.W.2d 842 (Tex.Crim.App.1979). Both of these cases are distinguishable on their facts. In *Green*, the defendant claimed he was denied sleep and food from the time of his arrest to the time of confession. In rebuttal, two Texas Rangers testified that at the time of taking his statement the defendant did not appear sleepy and that they asked him if he would like something to eat or drink. There, the court said "the officers' testimony specifically rebuts most of [defendant's] allegations, and implicitly rebuts the rest, as in *Alonzo*, because their account is fundamentally inconsistent with [defendant's] version." *Green*, 682 S.W.2d at 293.

In *Alonzo*, the defendant testified that two officers were present and that one of them physically abused him. The one officer who testified at the hearing on admissibility of the confession testified that both he and the allegedly abusive officer were together at all times when the defendant was being interrogated and that no abuse occurred. The allegedly abusive officer didn't testify until the trial itself, but his testimony at trial corroborated his fellow officer in rebuttal of the defendant's assertions. The court held that the officer's testimony, while it "did not specifically rebut" the defendant's allegations, was "fundamentally inconsistent" therewith and was adequate. *Alonzo*, 591 S.W.2d at 845–46.

Here, Officer Oakerson admitted he was not present at all times during the interrogation of appellant by Officer Spillman. It is possible that both appellant's testimony regarding the abuse by Officer Spillman and Officer Oakerson's testimony that he neither engaged in nor had personal knowledge of any abuse are true. The accounts given are not, therefore, "fundamentally inconsistent." Consequently, the State failed to meet its burden of affirmatively proving the voluntariness of appellant's confession, which would require rebuttal of appellant's testimony of coercion. Because appellant's testimony of alleged coercive acts is undisputed as to the actions of Officer Spillman, the confession was inadmissible as a matter of law. *Green*, 682 S.W.2d at 293; *Alonzo*, 591 S.W.2d at 846; *Farr*, 519 S.W.2d at 880.

■ By admitting the confession, the trial court committed reversible error because the admission of a coerced confession can never be harmless error. *Payne*, 356 U.S. at 568, 78 S.Ct. at 850; *Harryman v. Estelle*, 597 F.2d 927, 929 n. 5 (5th Cir.1979). *See also Smith v. State*, 547 S.W.2d at 9; *Farr*, 519 S.W.2d at 881. *Cf. Chapman v. State of California*, 386 U.S. 18, 22–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705 (1967). Consequently, we reverse the judgment and remand this cause for a new trial.

Reversed and remanded.